```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

|                                                    |                                |
| -------------------------------------------------- | ------------------------------ |
| UNITED STATES OF AMERICA,                          |                                |
| v.                                                 | CRIMINAL ACTION NO. 04-1705-CBS |
| CARLOS CABRAL, a/k/a "Carlos Estavez", a/k/a "Victor Matos", ET AL    Defendants, |                                |

**MEMORANDUM OF PROBABLE CAUSE AND
ORDER ON THE GOVERNMENT'S MOTION FOR DETENTION**
April 28, 2004

**SWARTWOOD, M.J.**

I.  Nature of the Offense and the Government's Motion

On March 23, 2004, a Criminal Complaint was filed, charging Carlos Cabral, a/k/a "Carlos Estavez", a/k/a "Victor Matos", ("Mr. Cabral") and another, with conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C. §846 and possession with intent to distribute and distribution of cocaine base, in violation of 21 U.S.C. §841(a)(1).

At Mr. Cabral's initial appearance on April 15, 2004, he was advised of his right to a preliminary examination in accordance with Fed. R. Crim. P. 5.1 and the Government moved for a detention hearing in accordance with 18 U.S.C. §§3142(f)(1)(B)(the offense charged provides for a maximum penalty of life

imprisonment),(f)(1)(C)(Mr. Cabral is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the "Controlled Substances Act"), and (f)(2)(A)(risk of flight).

On April 26, 2004, a consolidated probable cause/detention hearing was held and at that hearing, Rodney Budrow, a Sergeant in the Webster, Massachusetts Police Department, currently assigned to a Federal Drug Trafficking Task Force in Worcester, Massachusetts, testified on behalf of the Government and was cross-examined by Mr. Cabral's counsel.

## II.  Findings of Fact

1. In July 2003, a cooperating witness ("CW") advised Federal Task Force agents that Mr. Cabral was a multi-ounce crack cocaine dealer in Worcester, Massachusetts. The CW was then recruited by federal agents to purchase crack cocaine from Mr. Cabral. Govt. Ex. 1.

2. On November 21, 2003, the CW purchased 24.6 grams of crack cocaine for $800 from Mr. Cabral. The telephone arrangements for this sale were recorded as was the sale itself by a wire worn by the CW. Surveillance agents identified Mr. Cabral from previous arrest photographs during this transaction. Id.

3. On January 21, 2004, the CW purchased 27 grams of crack cocaine for $800 from Mr. Cabral. Telephone arrangements for this sale were recorded and the sale itself was monitored by surveilling

law enforcement agents but not recorded because of faulty recording equipment. Id.

4. On February 9 and 10, 2004, the CW made a series of recorded conversations with Mr. Cabral for the purchase of 2½ ounces of crack cocaine for $2,000. That sale was completed by Mr. Cabral's co-defendant, Elys Garcia, but during that transaction, Ms. Garcia called Mr. Cabral to confirm the price for the crack cocaine. This entire transaction was recorded as a result of a wire worn by the CW and law enforcement agents surveilling this transaction heard Ms. Garcia call Mr. Cabral to confirm the price of the crack cocaine. Id.

5. On January 11, 2004, Mr. Cabral was arrested on an outstanding felony warrant for illegal drug trafficking. At the time of his arrest, Mr. Cabral told the arresting officers that his name was "Victor Matos". Id.

6. Mr. Cabral had used the name "Victor Matos" in attempting to rent an apartment in Northbridge, Massachusetts. A Northbridge Police Officer showed a Northbridge landlord an arrest photograph of Mr. Cabral and the landlord identified the person shown in the photograph as being the person who identified himself to the landlord as "Victor Matos".

### III. Probable Cause

Mr. Cabral was recorded on the telephone on multiple occasions making arrangements to sell the CW crack cocaine. During the course of these recorded conversations, Mr. Cabral arranged to sell the CW approximately 4½ ounces of crack cocaine for $3,600. Mr. Cabral was recorded completing the sale of approximately an ounce of crack cocaine to the CW and monitored completing another sale of approximately 27 grams of crack cocaine to the CW. On a third occasion, Mr. Cabral's co-conspirator, Ms. Garcia, was recorded completing the sale of 2½ ounces of crack cocaine to the CW for $2,000. During this transaction, Ms. Garcia was recorded calling Mr. Cabral on the telephone to confirm the price of the crack cocaine. Therefore, I find that there is probable cause for the offenses charged against Mr. Cabral in this Complaint.

### IV. The Bail Reform Act

#### A. Discussion of the Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a). Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines

that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e). The Supreme Court, in United States v. Salerno, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." Id. at 755, 107 S.Ct. at 2105. For this reason, the Defendant may be detained only if the judicial officer finds by (1) clear and convincing evidence, that the Defendant is a danger to the community, or (2) a preponderance of the evidence, that the Defendant poses a risk of flight. See 18 U.S.C. § 3142 (f); United States v. Jackson, 823 F.2d 4-5 (2d Cir. 1987); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986). See also United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991). Furthermore, the judicial officer "may not impose financial condition that results in the pretrial detention of the person". 18 U.S.C. § 3142 (c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted. See 18 U.S.C. § 3142 (f)(1). The Government may also

move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or attempt to obstruct justice.  18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the Defendant and the safety of the community against any danger posed by the Defendant's pretrial release.  See United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community, the Government is aided by the statutory presumptions created by 18 U.S.C. 3142(e).  Where the offense charged is one of the offenses enumerated in Section 3142(f)(1), Section 3142(e) creates the rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the Defendant has been convicted of a federal offense that is described in Section 3142(f) or an offense under state law that would have been an offense described in Section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense.

Section 3142(e) also creates the rebuttable presumption that no condition or combination of conditions will ensure the safety of the community and the appearance of the Defendant if the judicial officer finds that there is probable cause to believe that the Defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed (a) in the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c). In order to rebut either presumption, the Defendant must produce "some evidence" to the contrary. United States v. Jessup, 752 F.2d 378, 384 (1st Cir. 1985).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including:

　　a.　the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    b.  whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

  (4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

  V. <u>Discussion of Whether Detention is Warranted</u>

   A. <u>Mr. Cabral's History and Characteristics</u>

  Mr. Cabral was born on May 3, 1967 in the Dominican Republic, where he lived until he was legally admitted into the United States on November 29, 2003[1]. Mr. Cabral has permission to remain in the United States until May 28, 2004.

  When Mr. Cabral first came to the United States, he lived in the Bronx, New York and for the past one and one-half years in Massachusetts living in both Worcester and Northbridge.

  Mr. Cabral's mother and father are deceased and two siblings, with whom he maintains minimal contact, reside in the Dominican Republic.

  Mr. Cabral is not married, but has four biological children who reside in the Dominican Republic.

---

[1] Mr. Cabral obviously entered the United States prior to this date, since he has been charged as early as September 2002 with drug offenses in the Worcester District Court. (See Criminal Record Attached To Pretrial Service Report).

Prior to Mr. Cabral's arrest in connection with this Complaint, he resided with his girlfriend, co-defendant, Elys Garcia, in Northbridge with her son.

For the past six months, Mr. Cabral has been working as an independent contractor doing roofing work and prior to that, was a manager of a restaurant in Worcester for four months.

Mr. Cabral has no criminal convictions.  However, on December 13, 2002, Mr. Cabral was charged with cocaine trafficking in the Worcester Superior Court and that case is currently pending in that court.  (Govt. Ex. 2).

    B. Nature of the Offense and Weight of the Evidence

I have previously found probable cause for the offenses charged against Mr. Cabral in this Complaint.  Mr. Cabral is: recorded on multiple occasions making arrangements for the sale of crack cocaine; recorded completing one of those transactions;  and monitored completing another transaction.  Additionally, his co-conspirator is recorded confirming with Mr. Cabral by telephone the price of the crack cocaine sold to the CW on a third occasion. Therefore, I find that the weight of the evidence against Mr. Cabral is substantial.

### C. Rebuttable Presumption

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B), (f)(1)(C) and (f)(2)(A). The Government must prove that there is no condition or combination of conditions that would reasonably assure the safety of any other person or the community if Mr. Cabral were released, or the appearance of Mr. Cabral as required.

The rebuttable presumption created by 18 U.S.C. § 3142(e) applies in this case, because Mr. Cabral is charged with a drug offense for which a maximum penalty of ten years or more is prescribed in the Controlled Substances Act. I have found probable cause exists for the offenses charged against Mr. Cabral in the Complaint. Therefore, I find that under 18 U.S.C. §3142(e), there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Mr. Cabral or the safety of the community if he were released. I find that Mr. Cabral has not produced nor proffered any credible evidence on his own behalf to rebut this presumption. Without such evidence, the presumption alone may justify detention. United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985); United States v. Vires, 637 F. Supp. 1343, 1351 (W.D.Ky. 1986). Although I have determined that Mr. Cabral has failed to rebut the presumption, for the sake of completeness, I will examine the Government's assertion that he poses a danger to the community and a risk of flight.

### D. Burden of Proof

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B), (f)(1)(C) and (f)(2)(A). The Government must prove that there is no condition or combination of conditions that would reasonably assure the safety of any other person or the community if Mr. Cabral were released, or the appearance of Mr. Cabral as required.

The Government's burden of proof is by:

1. *Clear and convincing evidence* that Mr. Cabral, if released, would pose a serious danger to any person or the community, or

2. A *preponderance of the evidence* that Mr. Cabral, if released, would not appear as required.

E. <u>Whether Mr. Cabral Poses A Danger to the Community</u>

Mr. Cabral is charged with a drug offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. Furthermore, Mr. Cabral is currently awaiting trial on state drug trafficking charges. However, these facts alone would not justify detention except for the rebuttable presumption, which applies in this case, and has not been rebutted. Therefore, based on the rebuttable presumption, the offenses against Mr. Cabral in this Complaint and his pending state charges, I find by clear and convincing evidence that Mr. Cabral poses a danger to the community and that there are no conditions or

combination of conditions that will assure the safety of any person or persons in the community if he were released.

      F.   <u>Whether Mr. Cabral Poses A Risk Of Flight</u>

On at least two prior occasions, Mr. Cabral has used an alias. When Mr. Cabral was arrested on January 11, 2004, he told a Massachusetts State Police Officer that his name was "Victor Matos" and he used that same name in attempting to rent an apartment in Northbridge, Massachusetts.

Except for his girlfriend, who is a co-defendant in this case, Mr. Cabral has no ties to this District or to this country, but has ties to the Dominican Republic where his four children reside and where he spent most of his life.

Because of the amount of crack cocaine that Mr. Cabral is alleged to have sold the CW, he faces a potential minimum/mandatory sentence of ten years followed by almost certain deportation if convicted of this offense. Additionally, Mr. Cabral's right to stay in this country terminates next month. Therefore, considering the totality of these circumstances, I find by a preponderance of the evidence that Mr. Cabral poses a risk of flight and that there are no conditions or combination of conditions that I can impose that would assure his appearance in this court as required.

      VI.   <u>Order of Detention Pending Trial</u>

In accordance with the foregoing memorandum,

IT IS ORDERED:

1. That Mr. Cabral be committed to the custody of the Attorney General or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That Mr. Cabral be afforded a reasonable opportunity for private consultation with counsel; and

3. On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Mr. Cabral is detained and confined shall deliver Mr. Cabral to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

<u>RIGHT OF APPEAL</u>

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

<u>/s/Charles B. Swartwood, III</u>
CHARLES B. SWARTWOOD, III
MAGISTRATE JUDGE